UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 16-6785-MWF (AJWx)      **Date:** July 20, 2018
**Title:** Estate of Feras Morad, et al. -*v*- City of Long Beach, et al.

**Present:** The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:                      Court Reporter:
Rita Sanchez                       Not Reported

Attorneys Present for Plaintiff:      Attorneys Present for Defendant:
None Present                     None Present

**Proceedings (In Chambers):**    ORDER RE: EVIDENTIARY AND INSTRUCTIONAL DECISIONS

During trial, the Court from the bench made evidentiary rulings and rulings on the jury instructions. In this Order, the Court sets forth the reasoning behind some of those determinations.

## I. DAVID JACKSON'S TESTIMONY THAT FERAS MORAD APPEARED TO BE ON DRUGS

On July 2, 2018, Plaintiffs raised a concern regarding the scope of Mr. Jackson's contemplated testimony. Specifically, they argued that Mr. Jackson's lay opinion that Mr. Morad was under the influence of a drug like PCP was inadmissible under Federal Rule of Evidence 701 because Mr. Jackson lacked any personal knowledge regarding PCP. Plaintiffs addressed their concerns in a written brief (Brief re: Evidentiary Issues at 2-7 (Docket No. 179)), and the Court heard from the parties at a telephonic hearing on July 2, 2018.

The Court notes that, in ruling on the parties' motions in limine, it previously held that evidence that Mr. Morad was under the influence of drugs at the time of the incident was inadmissible because it was too speculative, constituted hearsay, and the risk of prejudice outweighed any probative value. (*See* Order re: Motions in Limine (Docket No. 161).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 16-6785-MWF (AJWx)**                    **Date:  July 20, 2018**
**Title:**     Estate of Feras Morad, et al. -*v*- City of Long Beach, et al.

However, as to Mr. Jackson, the Court held during the telephonic hearing that he could offer his lay opinion that Mr. Morad appeared to be under the influence, but could not offer the specific opinion that Mr. Morad appeared to be under the influence of a drug like PCP.  As the Court explained, lay witnesses often offer testimony that describes in shorthand what the witnesses' observations were.  This approach to lay opinion is often one of "convenience", and allows for "'shorthand renditions' of a total situation, or [for] statements of collective facts."  *Asplundh Mfg. v. Benton Harbor Engineering*, 57 F.3d 1190, 1196 (3d Cir. 1996) (quoting 1 *McCormick on Evidence* 44 & n.16 (4th ed. 1992)).

It was this same reasoning that led the Court to allow a number of eyewitnesses to give testimony that was likely favorable to Plaintiffs, *i.e.*, that Mr. Morad did not appear to be a threat.

The Ninth Circuit has endorsed this approach to lay opinion testimony:

> We understand Rule 701 to mean that [lay opinions] may be admitted where the facts could not otherwise be adequately presented or described to the jury in such a way as to enable the jury to form an opinion or reach an intelligent conclusion.  If . . . the facts are difficult of explanation, or complex, or are a combination of circumstances and appearances which cannot be adequately described and presented with the force and clearness as they appeared to the witness, the witness may state his impressions and opinions based upon what he observed.  It is a means of conveying to the jury what the witness has seen or heard.

*United States v. Yazzie*, 976 F.2d 1252 (9th Cir. 1992) (admitting lay opinion testimony of witnesses who offered to testify that, as of the date of the alleged statutory rape, their observations caused them to believe the minor was over 16 years old); *United States v. Mastberg*, 503 F.2d 465 (9th Cir. 1974) (permitting under Rule 701 the testimony of a customs inspector that the defendant appeared nervous).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 16-6785-MWF (AJWx)          **Date:** July 20, 2018
**Title:**      Estate of Feras Morad, et al. -*v*- City of Long Beach, et al.

Lay opinions that someone appeared "drunk" or appeared "tired" are classic examples of this shorthand. *See Asplundh Mfg.*, 57 F.3d at 1196. However, lay opinion must still be rationally based on the witness's own perception, and requires first-hand knowledge or observation. Fed. R. Evid. 701 Adv. Comm. Note. Mr. Jackson did not demonstrate any personal familiarity with the effects of PCP specifically, so the Court held that testimony that Mr. Morad was on PCP lacked foundation, would not be helpful to the jury, and would likely be prejudicial. In contrast, Mr. Jackson's testimony that Mr. Morad appeared to be under the influence of drugs generally was admissible because it was shorthand for the behavior Mr. Jackson witnessed, and would help the jury to understand what Mr. Jackson perceived.

## II. DEFENDANT HERNANDEZ'S TESTIMONY REGARDING WHAT HE HEARD ON THE VIDEO RECORDING OF THE INCIDENT

Defendant Hernandez testified that, on a video created by a witness present at the scene, he could hear Mr. Morad say something like, "I'm coming to get you." Defendant Hernandez so testified on July 5, 2018. Plaintiffs objected because Mr. Hernandez testified that he could only hear the statement on the video after listening to it with headphones in a quiet office; the jury, on the other hand, had no such headphones and only heard the audio footage on the video in open court and (if they chose) under the same unassisted conditions in the jury room. Defendant Hernandez also testified that he discussed Mr. Morad's putative statement in the report he prepared after the incident.

The Court overruled Plaintiffs' objections and denied a motion to strike. The Court noted that this was an unusual situation because Court itself was hard pressed to hear anything resembling such a statement from Mr. Morad on the video recording. However, as Defendants argued, ultimately, the issue was one for cross-examination. Defendant Hernandez, who was actually present at the scene, wrote in his police report after the incident that he heard Mr. Morad make such a statement. That report was created before Defendant Hernandez knew any video existed that might corroborate his report. As a percipient witness, he testified to what he heard Mr. Morad say. He then also testified to what he heard on the video, albeit with the use of headphones.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 16-6785-MWF (AJWx)          **Date:** July 20, 2018
**Title:** Estate of Feras Morad, et al. -*v*- City of Long Beach, et al.

       The Court instructed the jury that the video itself was the evidence, and if the jury did not hear what Defendant Hernandez claimed to hear, it could reject his testimony. Plaintiffs had the opportunity to cross-examine Defendant Hernandez on the issue, and to examine multiple other eyewitnesses to what they heard at the scene. Ultimately, Defendant Hernandez's testimony about what he heard on the video, subject to cross-examination, could help the jury to determine the contents of the video. *See United States v. Gadson*, 763 F.3d 1189 (9th Cir. 2014) (admitting officer's testimony concerning content of recorded phone call as lay opinion because "[l]ay witness testimony regarding the meaning of ambiguous conversations based on the witness's direct perceptions and experience may also prove 'helpful to the jury' for purposes of Rule 701").

       Ordinarily, the Court probably would not have allowed Defendant Hernandez to testify about the statement in his report – a prior consistent statement to his trial testimony – because he arguably had the same motive to lie when he wrote the report. Fed. R. Evid. 801(d)(1)(B). (The Court writes "probably" because it was arguable that Hernandez was cross-examined so fiercely on his report that perhaps he could have testified to anything that was consistent, pursuant to either Rule 801(d)(1)(B)(i) or (d)(1)(B)(ii)). Here, however, it's an unusual situation because he didn't have a motive to conform his testimony to the video when he didn't know the video existed.

       In the Court's view, Defendant Hernandez hurt himself through this testimony about what he heard on the tape. The tape is too garbled even to tell if Mr. Morad said anything, let alone what. It was not persuasive for Defendant Hernandez to assert with no support or corroboration that he could hear the statement but only while using headphones. Defendants never followed that assertion with expert analysis of the tape or even an offer to have the jurors listen to the tape under like circumstances. Defendants then invited the Court to use the standard instruction with the jury, but the effect of that instruction was virtually to tell the jury to ignore Defendant Hernandez's testimony on this point. In a case that was extremely well-tried on both sides, this was perhaps the most questionable tactical decision and probably hurt Defendant Hernandez with the jury.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 16-6785-MWF (AJWx)         Date: July 20, 2018
Title:     Estate of Feras Morad, et al. -*v*- City of Long Beach, et al.

     The Court isn't saying that Defendant Hernandez lied about what he believes he heard. However, the Court's opinion is that he would have been better off if he had testified only that he heard Mr. Morad make the statement at the time, without referencing what he purportedly heard on the tape. This is especially true because one eyewitness did somewhat corroborate Defendant Hernandez's account of Mr. Morad's threat.

     Regardless whether his testimony helped or hurt him, as an evidentiary matter, Defendant Hernandez did have the right to testify to what he believed he heard on the tape and then to testify about his consistent statement in his report.

### III.   DEFENDANT'S EXPERT WITNESS CRAIG FRIES' TESTIMONY VIA DEPOSITION

     The Court permitted defense expert Craig Fries to testify by deposition, and admitted as exhibits his computer reconstructions of the scene of the incident. Plaintiffs submitted written Objections to Mr. Fries' appearance by deposition. (Docket No. 185). The Court heard from the parties on these issues on July 9, 2018.

     Before hearing from the parties on these issues and before trial commenced, the Court denied Plaintiff's motion in limine to exclude Mr. Fries' expert opinions on the basis that he was not qualified to offer them. (*See* Order re: Motions in Limine at 4-5). Specifically, the Court held that Mr. Fries appeared to be qualified as a scene reconstruction expert because he has testified frequently as an expert in the field, and producing reports and forensic animations of accident and crime scenes appeared to be Mr. Fries' area of longtime expertise. Moreover, Mr. Fries based his illustrations in this case on a wide variety of materials. (*Id.*). Accordingly, to the extent Plaintiffs' Objections suggested Mr. Fries was not qualified to offer his opinions, the Court overruled those objections as improperly seeking reconsideration of the Court's prior Order re: Motions in Limine.

     Mr. Fries was present in the courthouse on July 6, 2018, when Defendants were presenting their case. However, due to time constraints, Defendants did not call him

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 16-6785-MWF (AJWx)         **Date:** July 20, 2018
**Title:**    Estate of Feras Morad, et al. -v- City of Long Beach, et al.

---

that day. Defendant Hernandez finished testifying on both direct and cross-examination on Friday, July 6; he originally was called on Thursday, July 5. Defendants called Dr. Judith Melinek, another expert witness for Defendants who worked closely with Mr. Fries to provide Mr. Fries with some of the information he used to create his illustrations.

The next trial day was Tuesday, July 10. Mr. Fries was no longer available to testify in person; he was in Utah testifying in another trial, outside the subpoena power of this Court. Defendants proposed introducing his testimony by deposition. (*See* Objections at 1).

Plaintiffs objected, arguing that Mr. Fries' deposition was not admissible under Federal Rules of Civil Procedure 32(a)(4). Rule 32 provides that parties may use the depositions of unavailable witnesses if, among other things, the court finds that the witness is more than 100 miles from the trial "unless it appears that the witness's absence was procured by the party offering the deposition", Fed. R. Civ. P. 32(a)(4)(B), the court finds that the party offering the deposition could not procure the witness's attendance at trial by subpoena, Fed. R. Civ. P. 32(a)(4)(D), or the court finds "that exceptional circumstances make it desirable—in the interests of justice and with due regard to the importance of live testimony in open court—to permit the deposition to be used." Fed. R. Civ. P. 32(a)(4)(E).

Plaintiffs argued that courts interpret Rule 32(a)(4)(B)'s 100-mile rule as permitting admission of deposition testimony at trial only where the witness is *never* within 100 miles of the court in connection with the case during the proponent's case in chief. Plaintiffs further argued that some courts go further, declining to admit depositions even for witnesses who are more than 100 miles from the courthouse if those witnesses are available. As set forth above, Mr. Fries was apparently in the courthouse during Defendants' case in chief. However, Plaintiffs pointed to no in-district cases applying the interpretations described above, much less any binding authority. Moreover, while Plaintiffs argued that Mr. Fries was available to testify, they point to no evidence that he was available on any day other than July 6, 2018. (Objections at 3-4).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 16-6785-MWF (AJWx)**          **Date:  July 20, 2018**
**Title:**     Estate of Feras Morad, et al. -*v*- City of Long Beach, et al.

Plaintiffs also argued that Rule 32(a)(4)(D) did not apply because Defendants made no "reasonably diligent" efforts to secure Mr. Fries' attendance at trial. (Objections at 4).  Plaintiffs cite to *Forbes v. County of Orange*, 633 Fed. Appx. 417 (9th Cir. 2016), in which the Ninth Circuit held that the district court did not abuse its discretion when it denied the plaintiff's request to introduce a witness's deposition testimony at trial because the district court "permissibly concluded that [the plaintiff] failed to make [the] showing" that the plaintiff had been unable to procure the witness's attendance.  This Court does not read the holding of *Forbes* to suggest that it would be an abuse of this Court's discretion to conclude that Defendants ***have*** demonstrated they were unable to procure Mr. Fries to testify in person, especially considering the witnesses' scheduling conflicts, the time constraints of the trial schedule, and need for Defendants to make scheduling decisions on short notice – in part because of Plaintiffs' own shifting witness schedule, and the appropriately lengthy cross-examination of Defendant Hernandez.

Plaintiffs further argued that, in light of the arguments presented above, Defendants could not demonstrate that Rule 32(a)(4)(E) applied, and therefore, because Mr. Fries was not "unavailable," Mr. Fries' deposition was inadmissible hearsay under Federal Rule of Evidence 804(b)(1).  (Objections at 5-6).

The prejudice set forth in the Objections was entirely unconvincing.  (*Id.*) Defendants offered two bases.  The first basis was that Plaintiffs could not further cross-examine Mr. Fries about a printing mistake in one of the exhibits.  The same trivial point had been exhaustively pursued with Dr. Melinek previously.  The next basis was that Mr. Fries needed to be cross-examined on the failure of another district court to allow him to testify.  While that might have been relevant to this Court's prior ruling on the motion in limine, under no circumstances would this Court have allowed cross-examination on what was an issue of law.  (And this Court would not have ruled differently on the motion in limine on the basis of the other ruling.)

The Court did discuss with the parties what ***did*** matter.  No one really cared about Mr. Fries as a witness as such.  His only significance was to admit the exhibits. Everyone agreed that the exhibits could have been used as demonstrative aids in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 16-6785-MWF (AJWx)          **Date:** July 20, 2018
**Title:**     Estate of Feras Morad, et al. -*v*- City of Long Beach, et al.

Defendants' closing arguments. Therefore, this dispute related solely to whether certain exhibits would be in the jury room during deliberations or, in the alternative, shown to the jury in Defendants' closing arguments only.

      As discussed above, the Court concluded that Defendants sufficiently demonstrated that Mr. Fries was unavailable to testify. The Court acknowledges the principle that live testimony is preferable to deposition testimony. Indeed, as the Court indicated at the telephonic hearing on this matter, it is clear that Defendants themselves would have much preferred to present Mr. Fries' testimony live rather than via a deposition taken by opposing counsel. The Court understands Defendants' rationale for calling Dr. Melinek before Mr. Fries, as her testimony was more substantive and was generally necessary to set the stage for Mr. Fries' testimony. The Court found that Defendants had not engaged in gamesmanship to avoid having Mr. Fries testify live.

      As to prejudice, the Court reviewed the deposition and concluded that during the deposition, Plaintiffs cross-examined Mr. Fries about his methodologies and bases for creating those illustrations with reasonable thoroughness. The Court also gave an explanatory instruction to the jury in advance of Mr. Fries' deposition testimony in which the jury was instructed that Mr. Fries was an expert witness offering opinions that the jury was free to accept or reject, and that the jury should keep in mind that the illustrations he created were based on assumptions and viewpoints that, if Mr. Fries were testifying in person, Plaintiffs would have probably conducted further cross examination. *See, generally,* Robert E. Jones, et al., *Rutter Group Practice Guide: Federal Civil Trial and Evidence*, §§ 8:700-704 (2018) (explaining that visual reconstructions can greatly assist the jury, and any dissimilarities between the reconstruction and the incident may be the subject of a jury instruction and addressed in cross examination). The Court further informed the jury that Plaintiffs' counsel had the right to explain in closing argument what assumptions were implicit in the exhibits.

      Ultimately, the Court concluded that in light of the circumstances described above and the precautions taken by the parties and the Court, Plaintiffs would not suffer any unfair prejudice from the admission of Mr. Fries' testimony, which sufficiently laid the foundation for admission of his bullet-wound illustrations and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 16-6785-MWF (AJWx)        **Date:** July 20, 2018
**Title:**     Estate of Feras Morad, et al. -*v*- City of Long Beach, et al.

scene reconstructions. The reconstructions might have been helpful to the jury as counterparts to the exhibits created by Plaintiffs' expert, Dr. John Gardiner, or as adjuncts to the ample number of scene photographs and the large amounts of eyewitness testimony.

## IV. DAMAGES FOR PAIN AND SUFFERING FOR THE 14TH AMENDMENT CLAIM

The Court instructed the jury that pain and suffering damages were available to Mr. Morad's parents for their claim for deprivation of their familial relationship in violation of the Fourteenth Amendment, brought pursuant to 42 U.S.C. § 1983 (the second claim). The parties were heard on this issue both on and off the record, and Defendants' objections to this instruction were made on the record on July 10, 2018.

Defendants objected to this instruction, arguing that because § 1983 is silent on the measure of damages for such a claim, the Court must look to state law. California law does not permit pain and suffering damages for wrongful death claims. However, Plaintiffs pointed the Court to several district court cases that demonstrate an emerging consensus – not yet ratified by the Ninth Circuit – that pain and suffering damages are available for claims for violation of the Fourteenth Amendment. *See Ramirez v. Oxnard*, No. No. CV 12-9697-SVW (FFMx), 2013 U.S. Dist. Lexis 198848, at *6-9 (C.D. Cal. Aug. 13, 2013); *Cotton v. City of Eureka*, No. CV 08-4386-SBA, 2010 U.S. Dist. Lexis 136270, at *43-45 (N.D. Cal. Dec. 14, 2010); *McMurray v. County of Sacramento*, No. CV 09-2245-FEB (EFBx), 2012 U.S. Dist. Lexis 6187, at *9 (E.D. Cal. Jan. 19, 2012).

The Court found the reasoning of those cases highly persuasive and, in the absence of Ninth Circuit authority to the contrary, chose to follow them. The Court structured the Jury Instructions and the Special Verdict Form such that, had the Ninth Circuit held on appeal that pain and suffering damages were ***not*** available for the Fourteenth Amendment claim, the damages could have been easily stricken from the Judgement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 16-6785-MWF (AJWx)        **Date:** July 20, 2018
Title:     Estate of Feras Morad, et al. -*v*- City of Long Beach, et al.

IT IS SO ORDERED.